IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EDWARD SINGER,

    Plaintiff,

v.                                                                    Civ. No. 1:20-cv-00972 MIS/JFR

THE UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant United States of America's Motion to Dismiss a Claim for Lack of Subject Matter Jurisdiction and Memorandum in Support. ECF No. 55. Plaintiff Edward Singer responded, and Defendant replied. ECF Nos. 69, 72. Having considered the parties' submissions, the Complaint, and the relevant law, the Court will deny the Motion.

## BACKGROUND

This case concerns the medical treatment Plaintiff received at Northern Navajo Medical Center ("NNMC"), operated by the United States Department of Health and Human Services ("DHHS") as an Indian Health Services medical facility located in Shiprock, New Mexico. ECF No. 1 at 3, ¶ 10.

Plaintiff's Complaint alleges that on February 26, 2018, Plaintiff came to NNMC Emergency Department for evaluation of his left fifth digit, or "pinky, finger (the "finger"). *Id.* Plaintiff was seen and evaluated in the emergency room by Thomas B. Burnison, MD, who ordered an x-ray of the finger. *Id.* at 3, ¶ 11. The x-ray was taken and interpreted by Brian D. Demby, MD. *Id.* at 3, ¶ 12. Dr. Demby diagnosed a dorsal dislocation of the finger

with adjacent soft tissue swelling. *Id.* Dr. Burnison examined Plaintiff and noted the finger showed limited range of motion, swelling, and dark bruising. *Id.* at 3, ¶ 13. A neurological exam, also done by Dr. Burnison, showed "normal sensation." *Id.* at 3–4, ¶ 13. In addition, Dr. Burnison diagnosed a fracture in a part of the finger known as the "distal phalanx." *Id.* Dr. Burnison then consulted with the Orthopedic Clinic at NNMC. *Id.* at 4, ¶ 14. He spoke with "April," a medical professional at the clinic, who advised him the "fracture clinic [was] closed" and there were no openings. *Id.* April then advised Dr. Burnison to "try and reduce it and then splint in 30 degrees flexion . . . [and if] not able to reduce, will need [a] hand surgeon." *Id.* Dr. Burnison then reduced the dislocation using "betadine and a digital block of some unknown anesthetic" and reduced the finger resulting in "some [range of motion]." *Id.* at 4, ¶ 15.

A post-reduction x-ray was then taken after the splint was removed. *Id.* at 4, ¶ 16. The medical record states, "reduced again and bent/kept in 30 degrees and wrapped with ACE wrap to go to radiology." *Id.* at 4, ¶ 17. A post-reduction film was taken, and Dr. Demby interpreted this as "reduction [of] the previously dislocated 5th PIP joint. No associated fracture." *Id.* at 4, ¶ 18. Dr. Burnison instructed Plaintiff to follow up with the Orthopedic Clinic at NNMC in seven days. *Id.* at 4, ¶ 19. There was no mention of changing the dressing. *Id.*

On March 8, 2018, Plaintiff returned to NNMC after he unwrapped his splint and noted the finger was dead with dry gangrene. *Id.* at 4, ¶ 20. On March 14, 2018, Plaintiff underwent an amputation of the finger at Mercy Medical Center in Durango, Colorado. *Id.* at 5, ¶ 21. Plaintiff returned to NNMC on May 29, 2018, with phantom nerve pain and hypersensitivity of the area of the removed finger. *Id.* at 5, ¶ 22.

On December 10, 2019, Plaintiff filed an administrative claim with DHHS using a Standard Form 95 ("SF-95") to recover damages arising from the medical care he received at NNMC in February 2018. *See generally* ECF No. 55-1. DHHS failed to make a final disposition of Plaintiffs' claims within six months of presentation to Defendant. ECF No. 1 at 2, ¶ 6. Subsequently, on September 22, 2020, Plaintiff filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671 *et seq.*, alleging two counts: (1) medical negligence and (2) vicarious liability. *See generally* ECF No. 1.

As to Plaintiff's medical negligence claim, Plaintiff alleges the medical providers at NNMC were negligent based upon a: (1) failure to possess and apply the knowledge, skill, and care of a reasonably well-qualified practitioner under similar circumstances when providing medical care to Plaintiff; (2) failure to use reasonable care when performing examinations, care, and treatment of Plaintiff; (3) failure to reasonably ensure sufficient medical supplies were on-hand to provide reasonable care and treatment of Plaintiff; (4) failure to identify the extent of Plaintiff's condition and act with reasonable medical prudence in his treatment and care; and (5) failure to appropriately transfer Plaintiff to a facility capable of managing his condition. *Id.* at 5–6, ¶ 29.

In the present Motion, Defendant requests dismissal of Plaintiff's claim for medical negligence based upon a failure to appropriately transfer Plaintiff to a facility capable of managing his condition pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction. ECF No. 55 at 1. Specifically, Defendant asserts Plaintiff failed to exhaust administrative remedies provided by the FTCA with regards to his failure to transfer claim. *Id.*

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows a defendant to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. FED. R. CIV. P. 12(b)(1). Subject matter jurisdiction cannot be waived and thus may be raised by the parties or sua sponte at any time. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

A Rule 12(b)(1) motion "generally take[s] one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). In reviewing a facial attack on the complaint, a court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). On the contrary, in a factual attack the movant goes "beyond allegations contained in the complaint [to] challenge the facts upon which subject-matter jurisdiction depends." *Id.* at 1003. Accordingly, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.* A Rule 12(b)(1) motion based upon a failure to exhaust administrative remedies provided by the FTCA is deemed a factual attack on the complaint. *Gabriel v. United States*, 683 F. App'x 671, 673 (10th Cir. 2017).

Additionally, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a motion for summary judgment under Rule 56 when resolution

4

of the jurisdictional question is intertwined with the merits of the case. *Holt*, 46 F.3d at 1003. "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.* The underlying concern, however, is "not merely [] whether the merits and the jurisdictional issue arise under the same statute," but instead "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

## DISCUSSION

The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). "This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006) (quoting *In re Franklin Savings Corp.*, 385 F.3d 1279, 1289–90 (10th Cir. 2004)) (internal quotation marks omitted).

One such condition requires claimants to exhaust administrative remedies before they may bring suit in federal court. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Specifically, the FTCA states:

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied

5

>by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). A claim is "deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ." 28 C.F.R. § 14.2(a). This requirement is "jurisdictional and cannot be waived" and serves to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270, 271 n.3 (10th Cir.1991) (internal quotation marks omitted).

Accordingly, the FTCA "requires that claims for damages against the government be presented to the appropriate federal agency by filing '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (quoting *id.* at 270). The Tenth Circuit applies a pragmatic test to determine whether a claimant's written statement provides proper notice under the FTCA. *Staggs v. United States ex rel. Dep't of Health and Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005). It asks "whether the claim's language serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Id.* (citing *Trentadue*, 397 F.3d at 852) (internal quotation marks omitted). The "claim should give notice of the underlying facts and circumstances rather than the exact grounds upon which [the claimant] seeks to hold the government liable." *Id.* (citing *Trentadue*, 397 F.3d at 853) (internal quotation marks omitted). While a claim need not elaborate all possible

6

causes of action or theories of liability, it must nonetheless alert the agency of the facts that reasonably give rise to them. *See Trentadue*, 397 F.3d at 853. Thus, the claim asserted "encompasses any cause of action fairly implicit in the facts." *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016).

Here, Plaintiff's SF-95, which he submitted to DHHS on December 4, 2019, states:

> On February 26, 2018, Mr. Singer came to the Northern Navajo Medical Center ("NNMC") emergency room for evaluation of his left 5th digit finger. He was seen in triage by Dana Ewer, RN.
>
> He was seen and evaluated in the emergency room by Thomas B. Burnison, MD who ordered an x-ray of the left 5th digit.
>
> The x-ray of the left 5th finger was taken and interpreted by Brian D. Demby, MD. Dr. Demby diagnosed a dorsal dislocation of the 5th digit with adjacent soft tissue swelling.
>
> Dr. Burnison examined Mr. Singer and noted that his left 5th finger showed limited range of motion, swelling and dark bruising. The neurological exam done by Dr. Burnison showed "normal sensation". In addition to this, Dr. Burnison "diagnosed" a facture of the distal phalanx of the left 5th digital.
>
> Dr. Burnison consulted with the orthopedic clinic at 12:30 pm on February 26, 2018. According to the medical record, he spoke with April who advised Dr. Burnison that "fracture clinic closed, and she has no openings". Allegedly she advised Dr. Burnison to "try and reduce it and then splint in 30 degrees flexion","not able to reduce, will need hand surgeon".
>
> Dr. Burnison the [sic] reduced the dislocation using betadine and a digital block of some unknown anesthetic and reduced the digit resulting in "some ROM now".
>
> A post-reduction x-ray was then taken after the splint was removed in the [sic] prior to the x-ray.

The medical record states "reduced again and bent/kept in 30 degrees and wrapped with ACE wrap to go to radiology". There is no mention of a splint being applied after the second reduction and there is no mention of who performed the second reduction.

A post reduction film was taken and Dr. Demby interpreted this as "reduction the previously dislocated 5th PIP joint. No associated fracture".

Mr. Singer was given instructions by Dr. Burnison to follow-up in the orthopedic clinic in 7 days. There is no mention of changing the dressing.

On March 8, 2018 at 11:48 am Mr. Singer returned to NNMC after he unwrapped his splint that morning and noted that the left 5th digit was dead with dry gangrene.

As a result of the negligence by NNMC, Mr. Singer underwent an amputation of the left 5th digit on March 14, 2018 at Mercy Medical Center.

Mr. Singer returned to NNMC on May 29, 2018 with phantom nerve pain and hypersensitive of the area of the left 5th digit on his hand.

Claimant asserts that the negligence of the United States for the acts and failures to act of the federal medical personnel at Shiprock HIS arises under New Mexico law. 28 U.S.C. § 1346(b)(1)(the Court is to apply the law of the state) in a FTCA claim. Without the benefit of conducting discovery as to facts and evidence in the negligence claims against the United States, Claimant will claim, without limitation, the following claims allowable under New Mexico law:

1. Medical Negligence;
2. Negligent Hiring, Supervision, Retention;
3. Institutional negligence of Shiprock HIS and the USA by federal employees who are the directors of NNMC, HIS Area Director(s);
4. Vicarious Liability;
5. Breach of warranty in medical negligence;
6. Negligence per se;
7. Failure to diagnose;
8. Other yet to be identified potential claims for relief.

ECF No. 55-1.

Defendant argues the court lacks jurisdiction to entertain Plaintiff's failure to transfer claim as Plaintiff failed to provide proper notice of the claim in his SF-95. ECF No. 55 at 1. Specifically, Defendant contends Plaintiff's SF-95 does not include facts indicating Plaintiff should have been transferred or referred to another medical provider to address his dislocated finger or that NNMC was negligent in failing to do so. *See id.* at 4, ¶ 8. Defendant asserts Plaintiff's SF-95 lists eight alleged breaches in the standard of care for the care Plaintiff received but did not mention that any decisions to treat his finger dislocation at the NNMC Emergency Department, as opposed to another location, fell below the standard of care. *Id.* at 8–9. Moreover, Defendant emphasizes that although Plaintiff's SF-95 "mentions that Dr. Burnison contacted the NNMC Orthopedic Clinic and found out the fracture clinic was closed and had no openings [] and if he was not able to reduce the finger, a hand surgeon will be needed[,]" the facts "also establish that Dr. Burnison successfully reduced the dislocation and splinted and bandaged the finger." *Id.* at 9. Lastly, Defendant contends Plaintiff's SF-95 fails to mention the terms "transfer" or "another facility" or "to manage his care." *Id.*

In rebuttal, Plaintiff argues his SF-95 provides adequate notice of his failure to transfer claim, including the failure by NNMC providers to make arrangements for Plaintiff to be treated or referred to a hand surgeon and the parameters of his follow-up care after discharge. ECF No. 69 at 8. In support, Plaintiff points to facts in his SF-95, particularly Dr. Burnison's decision to treat Plaintiff's finger despite the fact the Orthopedics Department at NNMC was closed and there were no appointments available, *id.* at 8, and

9

that Dr. Burnison was purportedly informed by the Orthopedic Clinic that if he was unable to reduce Plaintiff's dislocation, Plaintiff would need a hand surgeon. *Id.* at 8–9. Plaintiff contends the SF-95 includes facts that there were at least two attempts by the Emergency Department staff to reduce the dislocation, but that the records reflect no referral to a hand surgeon despite the advice from the Orthopedic Clinic. *Id.* at 9. Additionally, the SF-95 states NNMC personnel informed him he was to "return" to the Orthopedic Clinic at NNMC in "seven days." *Id.* at 9. According to Plaintiff, implicit in this instruction is a failure to act by the medical staff in providing pertinent discharge instructions to Plaintiff. *Id.*

Having reviewed Plaintiff's SF-95, the Court determines Plaintiffs' administrative claim provided notice that DHHS should investigate the possibility of a claim of medical negligence based upon a failure to appropriately transfer Plaintiff to a facility capable of managing his condition. Although the SF-95 form itself is only two pages, in an attachment Plaintiff provided Defendant with a detailed chronology of the events that occurred at NNMC on February 26, 2018, and thereafter. *See generally* ECF 55-1. After describing Plaintiff's arrival at the NNMC Emergency Department, Plaintiff's SF-95 states "Dr. Burnison consulted with the orthopedic clinic at 12:30 pm on February 26, 2018." *Id.* at 3. The SF-95 then states Dr. Burnison "spoke with April who advised Dr. Burnison that 'fracture clinic closed, and she has no openings[.]'" *Id.* Thereafter, "she advised Dr. Burnison to 'try and reduce it and then splint in 30 degrees flexion . . . not able to reduce, will need hand surgeon[.]'" *Id.* According to the SF-95, there were then two attempts by NNMC Emergency Department staff to reduce the dislocation. *Id.* While the SF-95 provides some evidence that the reduction was deemed successful by NNMC Emergency Department staff, *see id.* ("A post reduction film was taken and Dr. Demby interpreted this

10

as "reduction the previously dislocated 5th PIP joint. No associated fracture[.]"), it also states Plaintiff returned to NNMC on March 8, 2018, and ultimately had to have his left fifth finger amputated. Finally, Plaintiff's SF-95 provides some grounds for which Plaintiff sought to hold the government liable, including a claim based upon medical negligence. *Id.* at 4. Thus, implicit in the facts is an allegation of breach of the standard of care by NNMC Emergency Department staff in failing to transfer Plaintiff to an orthopedic clinic or other facility, which resulted in the amputation of his finger.

Consequently, Plaintiff complied with the FTCA's procedural requirements pursuant to 28 U.S.C. § 2675(a), and the Court, therefore, can properly exercise its subject matter jurisdiction over Plaintiff's failure to transfer claim.

## CONCLUSION

For the foregoing reasons, Defendant United States of America's Motion to Dismiss a Claim for Lack of Subject Matter Jurisdiction and Memorandum in Support (ECF No. 55) is **DENIED**.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE